BEFORE THE FIRST DIVISION, JANUARY 24, 1962

**No. 66407.**—J. Bird Moyer Co., Inc. v. United States, protests 60/6575 and 60/27609 (New York).

OLIVER, Chief Judge: These two protests relate to certain so-called dappen dishes, which were assessed with duty at the rate of 42½ per centum ad valorem under paragraph 218(a) of the Tariff Act of 1930, as modified by T.D. 52739, supplemented by T.D. 52820, which reads as follows:

Biological, chemical, metallurgical, pharmaceutical, and surgical articles and utensils of all kinds, including all scientific articles, and utensils, whether used for experimental purposes in hospitals, laboratories, schools or universities, colleges, or otherwise, all the foregoing (except articles provided for in paragraph 217 or 218(e), Tariff Act of 1930), finished or unfinished, wholly or in chief value of glass.

Plaintiff's principal claim is for classification under the provision in paragraph 217, as amended by T.D. 54108, for glass jars, not specially provided for, and holding less than one-fourth of 1 pint, with a duty assessment at the appropriate rate, depending on the date of entry of the merchandise.

Alternative claims are made for classification either under paragraph 218(f), as amended by T.D. 53865, supplemented by T.D. 53877, as colored glass articles, not specially provided for, and valued at not over $1.66⅔ each, carrying a dutiable assessment at the rate of 30 per centum ad valorem; or under the provision in paragraph 230(d), as modified by T.D. 52739, for manufactures of glass, not specially provided for, with a dutiable rate of 25 per centum ad valorem.

The sole witness in the case was the president of the plaintiff corporation, who personally ordered the present merchandise and supplied the molds to the Italian manufacturer that produced the articles in question from glass pressed in the mold.

Plaintiff's uncontradicted testimony establishes that the dappen dishes in question are exclusively used by dentists to hold small quantities of medicaments or other materials used in the practice of dentistry. Describing the materials or substances that dentists put into these dappen dishes, the witness testified as follows (R. 18):

Normally they put their eugenol; or they put their abrasive materials to clean the teeth; or little medicaments to make touches in the cavity; clean the cavity; the cavity lining they put there; and the pillow of cotton they put on the tooth with the cavity before they fill it.

These dappen dishes are placed on the tray or stand alongside the dental chair. The quantity of a medicament or other material desired by the dentist is taken out of a large supply jar and transferred to the dappen dish, the purpose of such transfer being to prevent contamination, from dental instruments, of the substance stored in its original or larger container. The amount of the medicament or other material placed in the dappen dish is sufficient for application to, or treatment of, one patient, and, after each use, the dappen dish is cleaned by sterilization.

To support plaintiff's principal claim for classification of these dappen dishes as jars, counsel, in their brief, set forth several dictionary definitions of the word, "jar," as follows:

A new English Dictionary edited by James A. H. Murrey 1901.

jar, n. 1. a vessel of earthenware, stoneware or glass, without spout or handle (or having two handles), usually more or less cylindrical in form.

Webster's New World Dictionary—College Edition, Copyright 1953, 1954, 1955, 1956.

jar, n. 1. a container made of glass, stone or earthenware, usually cylindrical, with a large opening and no spout; some jars have handles.

Century Dictionary, Copyright 1889.

jar, n.—an earthen or glass vessel of simple form, without handle or spout.

Webster's New International Dictionary Second Edition Unabridged.

jar, n. 1. a deep, broad mouthed vessel of earthenware or glass, for holding fruit, preserves; or for ornamental purposes; as a honey jar; a rose jar.

\*    \*    \*    \*    \*    \*    \*

Defendant's brief quotes a definition of the word, "jar," from Funk & Wagnalls New Standard Dictionary, 1956 edition, as follows:

Jar n. 1. A deep vessel of earthenware or glass, more or less cylindrical in shape, with no spout, and generally with a wide mouth; specif. in electricity, a Leyden jar. \* \* \*

From an examination of the samples in evidence (plaintiff's exhibits 1–A to 1–E, inclusive), it is abundantly clear that the dappen dishes in question are not jars, within the common meaning thereof, as embodied in the foregoing definitions. The articles in question are approximately 1¼ inches in height and about 1¼ inches in width, with a shallow, cuplike opening at each end. The openings are of different widths and, consequently, susceptible of different capacities. As stated by the witness, one hollowed-out end contains "about 8 cc's," and the other "will take about 15 cc's" (R. 19). The dentist can reverse the article to make available the end he wants to use. Unlike jars, these dappen dishes are neither widemouthed nor simple in form. Their design and general appearance lend support to the oral testimony, to the effect that they are specifically made for exclusive use by dentists in the practice of their profession.

Plaintiff cites *Sandoz Chemical Works* v. *United States*, 69 Treas. Dec. 1135, Abstract 33114, and *Will & Baumer Candle Co., Inc.* v. *United States*, 37 C.C.P.A. (Customs) 27, C.A.D. 414. Each of those cases is distinguishable from the present one. The *Sandoz Chemical Works* case involved certain ordinary clear glass bottles that had been classified under the provision for scientific, chemical, or laboratory glassware. The court found that the bottles were used merely as carriers of a calcium gluconate solution that was injected into the necks of cows, and not used in laboratories, and, therefore, overruled the collector's classification and sustained the claimed classification for the merchandise as bottles. In the *Will & Baumer Candle Co., Inc.*, case, the merchandise consisted of empty glass jars that were classified as decorated glassware. Upon a record showing that the merchandise was designed, and used, to hold and transport wax candles, the appellate court held that the articles were properly classifiable as unfilled glass jars, suitable for use and of the character ordinarily employed for the holding and transportation of merchandise. The dappen dishes involved herein are neither bottles nor jars. They are articles or utensils molded in glass to a definite size and form, dedicating them, as established by plaintiff's uncontradicted evidence, for use as receptacles for medicaments or other materials used by dentists in dental surgery. They are not within the kinds or classes of merchandise contemplated by paragraph 217, as modified, under which plaintiff seeks classification.

Support for the collector's classification of the merchandise in question is found in *United States* v. *Kimball Dental Mfg. Co.*, 19 C.C.P.A. (Customs) 353, T.D. 45501, which, so far as pertinent to the present discussion, involved certain glass articles that were chiefly used "as receptacles for holding the cotton which dentists use in practicing their profession" and which the appellate court held to be classifiable as "utensils in the sense in which that word is first used in paragraph 218(a)." The said case was cited with approval in *Empire Laboratory Supply Co., Inc.* v. *United States*, 22 C.C.P.A. (Customs) 196, T.D. 47138, which involved certain bottles and so-called "specimen jars." The bottles served as containers for chemicals and dyes, used in performing experiments; and the "specimen jars" were used as containers of specimens, such as plants, animals, or tissues, in alcohol. Both classes of merchandise were held by the appellate court to be properly classifiable under the provision invoked herein by the collector in classifying the dappen dishes under consideration.

In the light of the decisions of the Court of Customs and Patent Appeals in the *Kimball* and *Empire* cases, *supra*, the dappen dishes in controversy are within the provisions of paragraph 218(a), as modified, *supra*, as assessed by the collector. They are receptacles for holding medicaments and other materials, including cotton, "which dentists use in practicing their profession" and, continuing with language in the said *Kimball* case, "In that respect they may, we

think, be properly regarded as utensils in the sense in which that word is first used in paragraph 218(a)."

"The law is well settled that the classification by the collector and his official acts are presumptively correct," *McKesson & Robbins, Inc.* v. *United States*, 27 C.C.P.A. (Customs) 157, C.A.D. 77, and it is equally "well established that the collector is presumed to have found every fact to exist that was necessary to sustain his classification," *E. I. du Pont de Nemours & Co.* v. *United States*, 27 C.C.P.A. (Customs) 146, C.A.D. 75. It is also a fundamental principle of customs law that when plaintiff challenged the collector's classification of the present merchandise, it assumed the dual burden of showing that the collector was wrong, as well as proving the correctness of its claimed classification. *Yardley & Co., Ltd., et al.* v. *United States*, 41 C.C.P.A. (Customs) 85, C.A.D. 533. On the evidence adduced herein, plaintiff has not sustained its burden.

On the basis of the record before us and for all of the reasons hereinabove set forth, we hold the dappen dishes in question to be properly dutiable at the rate of 42½ per centum ad valorem under paragraph 218(a), as modified, *supra*, as classified by the collector.

Consideration has been given to all of the cases cited in the briefs filed by counsel for the respective parties. Reference herein has been made only to the cases considered necessary to support the reasoning followed and the conclusion reached.

The protests are overruled and judgment will be rendered accordingly.